Kristin Escalante, California Bar No. 169635
escalantek@sec.gov
U.S. Securities and Exchange Commission
Plaintiff's Local Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

Chris Davis, Texas Bar No. 24050483
davisca@sec.gov
Clay Basser-Wall, Texas Bar No. 24054189
Basser-WallC@sec.gov
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900, Unit #18
Fort Worth, Texas 76102
Telephone:  (817) 900-2638
Facsimile:   (817) 978-4927
*Applications for Admission Pro Hac Vice Pending*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>      vs.<br><br>FORUM NATIONAL INVESTMENTS LTD.,<br>DANIEL CLOZZA,<br>ROBERT LOGAN DUNN,<br>WILLIAM BRAD ANGUKA, and<br>AHMAD FARID GHAZNAWI,<br><br>            Defendants. | **COMPLAINT** |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## JURISDICTION AND VENUE

1.     The Commission brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)].

2.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

3.     Venue is proper in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Anguka lives in, and a substantial portion of the conduct alleged in this complaint occurred within, the Central District of California.

## SUMMARY OF THE ACTION

4.     During 2012, Forum and its president and CEO, Daniel Clozza—along with the other defendants—engaged in a fraudulent scheme to artificially increase the price of Forum's stock.   The scheme had two components: a public relations campaign and an internet stock promotion.

5.     The public relations campaign involved Forum—at Clozza's direction— issuing a slew of press releases containing materially false and misleading information.  The press releases included materially false and misleading information about both the launch and success of a large bond offering, as well as a significant investment in Forum.

6.     To more widely disseminate the misinformation about Forum's stock, Clozza and one of his associates, Robert Dunn, hired William Anguka to carry out an

internet stock promotion.  Anguka hired Alex Ghaznawi to work with him.  The internet stock promotion involved Anguka and Ghaznawi creating and disseminating web pages and internet newsletters containing materially false and misleading information about Forum's business prospects.

7.      Combined, the two components of this fraudulent scheme caused significant increases in Forum's stock price and trading volume.  Dunn, along with Clozza's relatives and associates, profited from the scheme by selling more than one million shares of Forum stock at these artificially inflated prices.

8.      In the course of executing the fraudulent scheme, each defendant violated a number of provisions of the federal securities laws, including the antifraud provisions.  Consequently, the Commission seeks orders enjoining the defendants from future violations of the federal securities laws—along with civil penalties, disgorgement with prejudgment interest, penny stock bars, and for Clozza a bar from serving as a public company officer or director.

## DEFENDANTS

9.      **Forum National Investments Ltd.** was incorporated in British Columbia, Canada on September 22, 1995.  Forum's principal place of business is in Toronto, Ontario.  The Company is registered with the Commission pursuant to Section 12(g) of Exchange Act.  Forum's common stock trades on the over the counter "Pink Sheets."

10.   **Daniel Clozza**, age 54, is a resident of Vancouver, British Columbia, Canada.  He is the President, Chief Executive Officer, and a Director of Forum.  He is also one of the Company's largest shareholders.

11.   **Robert Logan Dunn**, age 35, is a resident of Abbotsford, British Columbia, Canada.  He is the CEO of Mosaic Holdings, Ltd., a company located in British Columbia.

12.   **William Brian Anguka**, age 28, is a resident of Upland, California.  He owns Steadman Equity Financial Group, LLC, a Wyoming limited liability company. Anguka promotes stocks through various internet-based media (such as Twitter and Facebook) and on various internet domains he owns.

13.   **Ahmad Farid Ghaznawi**, age 28, lives in Omaha, Nebraska and promotes stocks on various internet domains.  He does business as Skylab Global Investments, an unincorporated entity.

## FACTUAL ALLEGATIONS

I.   <u>Background</u>

14.   Forum began as a tourism business that sold memberships in a "travel club" and chartered a yacht it owned.  In 2008, Forum entered the life settlement industry by purchasing six life insurance policies on the secondary market for approximately $1.8 million.  These policies had a total face value of roughly $31 million.

15.     In 2011, Forum offered a convertible debenture secured by two of the life insurance policies it had purchased in 2008.  These two policies had a combined face value of $9 million.  Each of the 20 units of the debenture entitled the purchaser to $450,000 of the benefits Forum would receive when the policies matured.  Forum was able to sell only seven out of the 20 units during 2011.

16.     By the end of its fiscal year ended September 30, 2011, Forum was experiencing significant financial difficulties.  It had sold its travel business but continued to charter its yacht, which was encumbered by a $5 million loan.  Forum's other assets consisted almost entirely of four of the six life insurance policies it had purchased in 2008—two of which provided the security for the $9 million debenture offering.  The Company had an accumulated deficit of more than $25 million and less than $60,000 in cash.  It reported annual revenue of only $262,582, and its stock was trading at $0.13 per share on volume of less than 500 shares per day.

II.     The Scheme to Manipulate Forum's Stock
        a.     The Internet Stock Promotion

17.     Faced with this dire financial situation, Clozza turned to fraudulent means to spark interest in Forum's stock.  In November 2011, Clozza asked a colleague to introduce him to someone experienced with using the internet to promote companies.  Clozza's colleague introduced him to Anguka.

18.     On December 10, 2011, Anguka met with Clozza and three of his associates at the Vancouver International Airport.  One of those associates was Dunn.

Anguka proposed to use social media sites like Twitter and Facebook to promote Forum's stock.  He explained that he charged $70,000 or $80,000 per month for his services.

19.     On May 15, 2012, Dunn—on behalf of Forum and at Clozza's direction—wired approximately $15,000 to Anguka in order to begin promoting Forum's stock.  In total, Anguka received approximately $72,000 for his work on the promotion.  All of this money came directly from Dunn and/or companies controlled by him.  And the majority of that money came either directly or indirectly from Clozza and/or Forum.

20.     At or around the time of the initial payment, Anguka told Dunn that the materials for the internet stock promotion would need to identify the person or entity that was paying for it.  Dunn told Anguka to just make something up.  In response, Anguka suggested the name "Welsson Financial Media"—an entirely fictitious entity—which Dunn approved.

21.     On or about May 21, 2012, Anguka posted a report about Forum on an internet domain he owns, www.americaninvestingreport.com.  The report predicted a significant increase in the price of Forum stock:  "**FMNL could turn a $5000 investment into a staggering $41,300!**" (emphasis in original).  It urged investors to act quickly:  "Investors that act now on this life changing ground floor opportunity could stand to reap massive profits this year as shares of **Forum National Investments Ltd. (FMNL)** are currently trading at unbelievable bargain prices."

(emphasis in original).  It was signed "From The Desk of John Wells" and stated that "American Investing Report.Com" had been compensated $650,265 by Welsson Financial Media to "build industry and investor awareness."

22.     The May 21, 2012 report contained several materially false and misleading statements.  First, Anguka had no basis for predicting any increase in the price of Forum stock, much less a dramatic one.  Second, no one named "John Wells" was involved in creating or posting the report.  Third, neither Anguka nor his companies were paid anywhere close to $650,000 for his work on the promotion. Finally, Anguka's compensation came directly or indirectly from Dunn and Forum, not Welsson Financial Media.

23.     Anguka hired Ghaznawi to assist him in preparing and posting materials on the internet as part of the fraudulent stock promotion.  He paid Ghaznawi approximately $27,000 for these services.

24.     On or about May 24 and June 5, 2012, Ghaznawi created and posted two reports about Forum on internet domains he owns: www.thewallstreetbulls.com and www.marketbullreport.com.  Both of these reports contained materially false and misleading statements.  For example, the reports falsely claimed that an "**URGENT BUY ALERT**" (emphasis in original) had been issued for Forum, with a target price of $10 per share.  In fact, no such alert or target price had been issued, and Ghaznawi had no basis for projecting a target price of $10 per share.  The reports also falsely stated that Welsson Financial Media had paid the Wall Street Bulls and Market Bull

Report $100,000 each to provide promotional services for Forum.  Ghaznawi did not receive anything close to this amount for his work, and what he did receive came from Dunn and/or Forum, through Anguka.

25.    On or about June 13, 2012, Ghaznawi and/or Anguka created two investor newsletters that they then posted on several internet message boards—including "Investors Hub" and "Stock Hideout."  The newsletters were designed to look like scanned copies of hard copy letters that had actually been mailed to investors, making them materially misleading in their entirety.  They also made incredible and unfounded statements about Forum stock, including: "**YOU COULD MAKE A FORTUNE WITH JUST ONE TRADE**" and "**ANALYSTS SAY THAT SHARES OF FMNL COULD SURGE TO $10.00 OR MORE THIS SUMMER!**" (emphasis in originals).  Neither Ghaznawi nor Anguka had any basis for the prediction that investors could make a fortune on Forum stock, and analysts were not predicting a surge in Forum's stock price.

26.    In addition, one of the newsletters contained a picture of a "Lead Small Cap Analyst" it identified as "Alan Carter," and quoted Carter as saying:  "**This is the sort of company you really want to consider having in your portfolio as soon as possible because shares could easily skyrocket more than 1000% that's why I'm giving FMNL an AGGRESSIVE BUY RATING**." (emphasis in original).  The newsletters also claimed that the Wall Street Bulls and Market Bull Report had each received more than $650,000 to advertise and promote Forum.  As both Ghaznawi

and Anguka knew, these statements were materially false.  No stock analyst named

Alan Carter, nor any other lead small cap analyst, was involved in preparing the

newsletters.  Therefore, the picture and quote were materially false in their entirety.

And as noted above, neither Ghaznawi nor Anguka received anywhere close to

$650,000 for their work on the promotion.

b.   The Public Relations Campaign

27.   Forum did not issue a single press release in the twenty-four months that

preceded the internet stock promotion.  Once the promotion started, however, Forum—

at Clozza's direction—issued a barrage of press releases to stir up additional interest in

the Company's stock.  In just over one month, between May 15 and June 25, 2012,

Forum issued seven press releases concerning a variety of topics.  Clozza timed these

press releases to coincide with the internet promotion being run by Anguka and

Ghaznawi.  Clozza caused Forum to issue its first press release on May 15, 2012—the

same day Dunn made the initial payment to Anguka for the internet promotion.

28.   The May 15 press release included a quote purporting to be from Aliya

LifeSpan's COO, Robert Benson.  Because the quote was fabricated and issued without

Benson's involvement or permission, it was materially false and misleading.

29.   Forum issued additional materially false and misleading press releases on

June 12 and 25, 2012.  These two press releases inaccurately stated that Forum had

"launch[ed]", then subsequently "SOLD OUT" (emphasis in original) a $9 million bond

offering.  In fact, the only offering Forum conducted in 2012 was the continued offering

of the $9 million debenture, which Forum had launched in 2011.  And Forum had not sold out that offering by June 25, 2012.  Rather, $4 million of that offering remained unsold as of November 2012.

30.    Forum also issued a materially false and misleading press release on June 30, 2012, in response to an inquiry from the British Columbia Securities Commission—which had raised questions about the internet promotion.  For example, the June 30 press release falsely stated that Forum "has no knowledge of the source of funding for the creation and dissemination of the internet materials."  In fact, Clozza—who had personally approved and directed the promotional campaign—knew that Forum was the source of the funding for the creation and dissemination of these materials.

31.    The fraudulent scheme prompted huge moves in Forum's stock price and trading volume.  On May 14, 2012, one day before Forum began its press release campaign, the stock closed at $0.36 per share on a volume of 15,000 shares.  On June 25, 2012, the day Forum issued its press release announcing that its $9 million bond offering had "SOLD OUT," the price closed at $1.90 per share on a volume of 254,000 shares.  The following chart demonstrates the effect of the campaign on Forum's stock:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    32.    This was highly profitable for Clozza's relatives and associates—who

22  collectively sold more than one million shares of Forum stock during this period,

23

24  including Dunn who sold 159,575 shares for proceeds of $148,036.38.

25    33.    In response to this unusual trading activity, the British Columbia

26

27  Securities Commission issued a halt trade order on Forum stock on June 28, 2012.

28  However, trading resumed on August 9, 2012.

COMPLAINT                              11

34.     After trading resumed, Clozza caused Forum to spread more materially false and misleading information.  On October 8, 2012, Forum issued a press release stating that "Forum […] and Aliya Companies International ("ALIYA") jointly announce that they have executed an Investment Agreement for eighty (80) million dollars of investment into FORUM over the next twenty-four (24) months."  In reality, the agreement did not require Aliya Companies International to invest any money at all into Forum—much less $80 million.  Rather, it merely gave Aliya Companies International the option of bringing up to $80 million of "investment or shareholder equity" into Forum in exchange for the right to earn Forum shares at a rate of $0.50 per share.  In fact, Aliya Companies International never invested any money into Forum pursuant to the investment agreement.  Nor did it bring any shareholder equity to Forum pursuant to the agreement.

35.     The trading price of Forum stock increased in response to the October 8, 2012 press release, from an opening price of $1.10 per share to a high of $1.50 per share on that date.

III.     Failure to File Required Reports with the Commission

36.     As an issuer registered with the Commission pursuant to Section 12 of the Exchange Act, Forum is required to make certain periodic filings with the Commission.  However, Forum has not made its required filings.  Forum's last filing, periodic or otherwise, was its annual report for the year ended September 30, 2012 on Form 20-F,which was filed on February 21, 2013.

COMPLAINT                                    12

# FIRST CLAIM FOR RELIEF

## (against all Defendants)

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder*

37.     The Commission realleges and incorporates by reference Paragraphs 1 through 36.

38.     Each defendant, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

      a.  employed devices, schemes, or artifices to defraud;

      b.  made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

      c.  engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

39.     By engaging in the conduct described above, Defendants, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### (against Anguka, Ghaznawi, and Dunn)

*Violations of Section 17(b) of the Securities Act*

40.     The Commission realleges and incorporates by reference Paragraphs 1 through 36.

41.     Section 17(b) of the Securities Act [15 U.S.C. § 77q(b)] prohibits any person from publishing or circulating any advertisement or communication describing a security without fully disclosing the compensation received in exchange for the advertisement or communication.

42.     Anguka and Ghaznawi violated and, unless restrained and enjoined, will continue to violate Section 17(b) of the Securities Act [15 U.S.C. § 77q(b)].

43.     Dunn aided and abetted Anguka's and Ghaznawi's violations and, unless restrained and enjoined, will continue to aid and abet violations of Section 17(b) of the Securities Act [15 U.S.C. § 77q(b)].

## THIRD CLAIM FOR RELIEF

### (against Forum only)

*Violations of Section 13(a) of the Exchange Act and Rule 13a-1 Thereunder*

44.     The Commission realleges and incorporates by reference Paragraphs 1 through 36.

45.     Forum violated Section 13(a) of the Exchange Act [15 U.S.C.  §§ 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 13a-1], which require issuers to file with the Commission accurate annual reports.

46.     Unless restrained and enjoined, Forum will continue to violation of Section 13(a) of the Exchange Act and Rule 13a-1 thereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment that:

A.     permanently restrains and enjoins each defendant from violating Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5];

B.     permanently restrains and enjoins Anguka and Ghaznawi from violating and Dunn from aiding and abetting violations of Section 17(b) of the Securities Act [15 U.S.C. § 77q(b)];

C.     permanently restrains and enjoins Forum from violating Section 13(a) of the Exchange Act [15 U.S.C.  §§ 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 13a-1];

D.     orders Clozza, Dunn, Anguka, and Ghaznawi to disgorge all ill-gotten gains, with prejudgment interest;

E.      orders each defendant to pay civil penalties pursuant to Sections 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and/or Section 21(d)(3) of the Exchange Act [15 USC § 78u(d)(3)];

F.      prohibits Clozza, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

G.      prohibits Clozza, pursuant to Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)], and Dunn, Anguka, and Ghaznawi pursuant to Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)] and Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)], from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock;

1   H.   grants such other relief as the Court may deem just and appropriate; and

2   I.   retains jurisdiction of this action in accordance with the principles of

equity and the Federal Rules of Civil Procedure in order to implement and carry out

the terms of all orders and decrees that may be entered, or to entertain any suitable

application or motion for additional relief within the jurisdiction of this Court.

Dated:  November 18, 2014                Respectfully submitted,

*/s/ Kristin Escalante*

Kristin Escalante, California Bar No. 169635
escalantek@sec.gov
U.S. Securities and Exchange Commission
Plaintiff's Local Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

Chris Davis, Texas Bar No. 24050483
davisca@sec.gov
U.S. Securities and Exchange Commission
Plaintiff's Lead Counsel
801 Cherry Street, Suite 1900, Unit #18
Fort Worth, Texas 76102
Telephone:   (817) 900-2638
Facsimile:    (817) 978-4927
*Application for Admission Pro Hac Vice
Pending*

Clay Basser-Wall, Texas Bar No. 24054189
Basser-WallC@sec.gov
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Telephone:  817-978-1419
Facsimile:   817-978-3049
*Application for Admission Pro Hac Vice
Pending*

COMPLAINT                                17