UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENT AS TO DEFENDANTS CLOZZA AND ANGUKA (DKT. 65)

**I.     Introduction**

On November 18, 2014, the Securities and Exchange Commission ("SEC") brought this action against Forum National Investments, Ltd. ("Forum"), Daniel Clozza, Robert Logan Dunn, William Brad Anguka, and Ahmad Farid Ghaznawi (jointly, "Defendants") alleging violations of federal securities laws. Complaint, Dkt. 1. There are three causes of action: (i) violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") against all Defendants; (ii) violations of Section 17(b) of the Securities Act of 1933 ("Securities Act") against Anguka, Ghaznawi, and Dunn; and (iii) violations of Section 13(a) and Rule 13a-1 of the Exchange Act against Forum. *Id.*

On November 3, 2015, a final judgment was entered as to Dunn pursuant to his settlement with the SEC. Dkt. 44. On December 7, 2015, the action was stayed as to the remaining Defendants. Dkt. 48. Thereafter, on February 26, 2016, Clozza, Anguka, and Ghaznawi stipulated to the entry of judgments imposing a permanent injunction and disgorgement obligations. Dkts. 52, 54-55. On the same date, Forum stipulated to a judgment of a permanent injunction. Dkt. 53.

On February 29, 2016, the stipulated judgments as to all Defendants were entered. The judgment entered against Clozza states that "the Court shall, upon motion of the SEC, order whether an Officer and Director Bar or Penny Stock Bar should be ordered against Defendant, including the length (if any) of such bars." Dkt. 56 at 2. The stipulated judgments as to Anguka and Ghaznawi state that "the Court shall, upon motion of the SEC, order whether Defendant should be required to pay a civil penalty pursuant to Sections 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 USC § 78u(d)(3)]." Dkt. 58 at 4; Dkt. 59 at 4. In order to implement these agreements, on July 19, 2016, the SEC filed a Motion for Remedies and Entry of Final Judgment as to Clozza, Anguka, and Ghaznawi ("Motion"). Dkt. 65.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

On October 26, 2016, the SEC and Ghaznawi stipulated that they had reached a settlement in principle. As a result, they requested that the case against Ghaznawi be stayed. Dkt. 74. The stay was approved and entered on October 31, 2016. Dkt. 75.

A hearing on the Motion as to Clozza and Anguka was held on November 14, 2016. Only counsel for the SEC appeared. The Court stated its tentative views that it would impose officer and director and penny stock bars against Clozza and civil penalties against Anguka. After argument was presented, the matters were taken under submission. For the reasons stated in this Order, the Motion is **GRANTED IN PART**.

**II.      Factual and Procedural Background**

The Complaint alleges that Forum was incorporated in British Columbia, Canada, on September 22, 1995. Complaint at ¶ 9. Until 2008, it operated as a tourism business that sold memberships in a "travel club" and chartered a yacht. *Id.* at ¶ 14. In 2008, it entered the life settlement industry by purchasing six life insurance policies with a collective value of approximately $31 million. *Id.* In 2011, Forum offered the opportunity to purchase interests in a convertible debenture secured by two of these life insurance policies, which had a collective value of approximately $9 million. *Id.* at ¶ 15.   It offered 20 units in the debenture, each of which was represented to have a value of $450,000. *Id.* Forum was able to sell only seven of the 20 units. *Id.*

By the end of the 2011 fiscal year, Forum had accrued a deficit of more than $25 million, and had less than $60,000 in cash. *Id.* at ¶ 16. Its reported annual revenue was only $262,582, and its stock was trading at $0.13 per share at a volume of less than 500 shares per day. *Id.* In December 2011, Clozza, who was the President and CEO of Forum, met with Anguka to discuss a means to promote Forum's stock. *Id.* at ¶ 18. Anguka owned Steadman Equity Financial Group, LLC and promoted stocks online. *Id.* at ¶ 12.

In May 2012, Dunn, acting on behalf of Forum, paid Anguka approximately $15,000 to begin promoting Forum's stock. *Id.* at ¶ 19. Anguka told Dunn that the materials for the internet stock promotion would need to identify the person or entity paying for them. *Id.* at ¶ 20. Dunn allegedly told Anguka to invent a name. Anguka did so, and suggested the name "Welsson Financial Media." *Id.*

Later that month, Anguka posted a report about Forum on an internet domain he owned, www.americaninvestingreport.com. It predicted a significant increase in the price of Forum stock. *Id.* at ¶ 21. The report was signed "From the Desk of John Wells" and stated that "American Investing Report.Com" had been paid $650,265 by Welsson Financial Media to "build industry and investor awareness." *Id.* Each of these statements was false or misleading. *Id.* at ¶ 22.

Anguka hired Ghaznawi to assist him in preparing materials to promote the stock of Forum. *Id.* at ¶ 23. In late May and early June 2012, Ghaznawi created and posted two reports about Forum on two websites: www.thewallstreetbulls.com and www.marketbullreport.com. Each stated that an "Urgent Buy Alert" had been issued for Forum stock with a target price of $10 per share. *Id.* at ¶ 24. The reports also stated that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

Welsson Financial Media had paid $100,000 to both Wall Street Bulls and Market Bull Report to promote Forum. *Id.* These statements were false or misleading. *Id.*

In mid-June 2012, Ghaznawi and/or Anguka created two investor newsletters that were posted on internet message boards including "Investors Hub" and "Stock Hideout." The newsletters were designed to appear to be scanned copies of hard copy letters. They included statements such as "YOU COULD MAKE A FORTUNE WITH JUST ONE TRADE" and "ANALYSTS SAY THAT SHARES OF FMNL COULD SURGE TO $10.00 OR MORE THIS SUMMER!" *Id.* at ¶ 25. One of the newsletters included a photograph of "Alan Carter," who was identified as a "Lead Small Cap Analyst." The newsletter stated that Carter had given an aggressive buy rating to Forum stock. *Id.* at ¶ 26. The newsletters claimed that Wall Street Bulls and Market Bull Report each received $650,000 to advertise and promote Forum. *Id.* All of these statements were false or misleading, and no small cap analyst, including "Alan Carter," was involved in the newsletters. *Id.*

Between May 15 and June 25, 2012, Forum issued seven press releases. Each was timed to coincide with the internet promotion. *Id.* at ¶ 27. The May 15, 2012 press release included a manufactured quotation attributed to the COO of another company. *Id.* at ¶ 28. Press releases issued on June 12 and 25, 2012, falsely stated that Forum had launched and then sold all of a $9 million bond offering. *Id.* at ¶ 29. Forum also issued a false and misleading press release on June 30, 2012. It was issued in response to an inquiry from the British Columbia Securities Commission ("BCSC"), and stated that it had no knowledge of the source of funding for the creation and dissemination of the internet materials. *Id.* at ¶ 30.

As a result of these schemes, Forum's stock rose in price from $0.36 per share on a volume of 15,000 shares on May 14, 2012, to $1.90 per share on a volume of 254,000 shares on June 25, 2012. *Id.* at ¶ 31.

The BCSC issued a brief halt trade order on Forum stock on June 28, 2012. *Id.* at ¶ 33. It was lifted on August 9, 2012. *Id.* The Complaint alleges that, after the halt trade order was lifted, Forum continued to issue misleading press releases that had a material effect on the trading price of Forum's stock. *Id.* at ¶¶ 34-35. The Complaint also alleges that, during this same time period, Forum failed to file required forms with the SEC. *Id.* at ¶ 36.

The judgment against Clozza permanently enjoined him from violating Section 10(b) and Rule 10b-5 of the Exchange Act. Dkt. 56 at 2. It also provided that, upon a motion of the SEC, the Court could order an Officer and Director Bar and/or Penny Stock Bar against Clozza. *Id.* The judgment also provides that:

> in connection with the SEC's motion, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

56(c) of the Federal Rules of Civil Procedure, except that either Party may move the Court to allow discovery in connection with such motion and any opposition to such motion.

*Id.* at 2-3. Clozza was also required to pay $58,608 in disgorgement and prejudgment interest. *Id.* at 4.

The judgment against Anguka included a permanent injunction that barred him from violating Section 10(b) and Rule 10b-5 of the Exchange Act. Dkt. 58 at 2. It also permanently enjoined him from participating in any offering of penny stock. *Id.* at 3. The judgment provided that, upon motion of the SEC, the Court could order Anguka to pay a civil penalty pursuant to Sections 20(d) of the Securities Act and 21(d)(3) of the Exchange Act. *Id.* at 4. The judgment contains the same language used in the judgment as to Clozza in barring Anguka from undertaking any of the following actions: (i) arguing that he did not violate federal securities laws; (ii) challenging the validity of the judgment; and (iii) solely for the purpose of the SEC motion, contesting the allegations in the Complaint. The judgment also provides that any issue raised in the motion can be decided on the basis of affidavits, declarations, excerpts of sworn testimony, and documentary evidence. *Id.* Anguka was also required to pay disgorgement and prejudgment interest in the total amount of $49,630. *Id.* at 4-5.

On July 17, 2016, the SEC filed the Motion. Dkt. 65. On November 1, 2016, Anguka submitted a declaration stating that he cannot get employment in the financial industry due to the present litigation. Dkt. 76 at ¶ 1. It also states that his wife is now the breadwinner in the family, and that her work generates the income needed to pay their living expenses, including their monthly home mortgage payment of $2,078. *Id.* at ¶ 3. It also states that Anguka is accruing significant debt and may have to file for bankruptcy if he is unable to find new employment. *Id.* at ¶ 6.

**III.   Analysis**

    **A.   Penalty Against Anguka**

        1.   Legal Standards

Monetary penalties may be imposed in civil actions brought under either the Securities Act or the Exchange Act. 15 U.S.C. § 77t(d) (Securities Act); 15 U.S.C. § 78u(d)(3) (Exchange Act). The amount of penalties that are permitted fit within several tiers:

(A) First tier: The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (i) [$7,500][1] for a natural person . . . , or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation.

---

[1] The monetary amounts in this statute are adjusted for inflation at regular intervals. See 17 C.F.R. § 201.1001. The SEC states that the maximum penalty at the time of Anguka's violations was $6500 for Tier 1 violations. Dkt. 65 at 7. However, the actual amount appears to have been $7500. *See SEC v. Lyndon*, 39 F. Supp. 3d 1113, 1123 (D. Haw. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

>   (B) Second tier: Notwithstanding subparagraph (A), the amount of penalty for each such violation shall not exceed the greater of (i) [$75,000]² for a natural person . . . , or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.
>
>   (C) Third tier: Notwithstanding subparagraphs (A) and (B), the amount of penalty for each such violation shall not exceed the greater of (i) [$150,000]³ for a natural person . . . , or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if –
>
>>   (I) the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>>
>>   (II) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. § 77t(d)(2); 15 U.S.C.A. § 78u(d)(3)(B).

"A district court has discretion to impose civil penalties for securities violations." *SEC v. Loomis*, 17 F. Supp. 3d 1026, 1032 (E.D. Cal. 2014) (citing *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013)). In deciding whether a civil penalty is appropriate, courts may consider the following factors:

>   (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations.

*SEC v. Fehn*, 97 F.3d 1276, 1295-96 (9th Cir. 1996). "The court may also consider 'other sanctions the defendant faces, whether criminal or civil.'" *Loomis*, 17 F. Supp. 3d at 1032 (quoting *SEC v. Church Extension of the Church of God, Inc.*, 429 F.Supp.2d 1045, 1051 (S.D. Ind. 2005)).

In the context of a claim of securities fraud, scienter as to the person making an allegedly false statement may be required. Scienter is "a form of intentional or knowing misconduct." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)). This standard can be satisfied by either actual intent or "deliberate recklessness." *Id.*

       2.      <u>Application</u>

The SEC seeks the imposition of "substantial" penalties. Dkt. 65 at 8. In support of this position it argues:

---

² *See Lyndon*, 39 F. Supp. 3d at 1123.
³ *See Lyndon*, 39 F. Supp. 3d at 1123.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

(i) Anguka acted with scienter; (ii) he engaged in repeated misconduct through ongoing publication of false and misleading statements; (iii) he settled the claims in the proceeding without admitting any wrongdoing; (iv) he has not given any assurances that he will not commit violations in the future; and (v) there is a significant opportunity for him to commit future violations, because to do so all he needs is "access to the internet and word processing software." *Id.* at 8.

The judgment entered against Anguka provides that, for the purposes of a motion like the one now at issue, "the allegations of the Complaint shall be accepted as and deemed true by the Court." Dkt. 58 at 4. The relevant allegations in the Complaint as to Anguka are: (i) he received approximately $72,000 for his work promoting Forum stock; (ii) he fabricated Welsson Financial Media and represented that it was paying for the internet promotions he created; (iii) he posted a baseless report on www.americaninvestingreport.com signed by a fictional entity that predicted a significant increase in the price of Forum stock; and (iv) he hired Ghaznawi and caused him to create and post two additional false and misleading reports about Forum stock online. Complaint at ¶¶ 19-24.

The Complaint also alleges that "Ghaznawi and/or Anguka" created two investor newsletters with "incredible and unfounded statements about Forum stock." *Id.* at ¶ 25. It then alleges that "[n]either Ghaznawi nor Anguka had any basis for the prediction that investors could make a fortune on Forum stock, and analysts were not predicting a surge in Forum's stock price." *Id.* Finally, it alleges that Ghaznawi and Anguka each knew that the statements in the investor newsletters were materially false. *Id.* at ¶ 26.

The allegations in the Complaint, which are deemed true pursuant to the stipulated judgment, are sufficient to establish that Anguka acted with scienter. He imagined and then falsely presented as real Welsson Financial Media, John Wells, and Alan Carter. *See* Complaint at ¶¶ 20-21, 26. In one report, he stated that he had been compensated $650,265 by Welsson Financial Media, which he knew was false. *Id.* at ¶ 22. The allegations in the Complaint are also sufficient to establish that Anguka's involvement in the scheme was continuous over a period of at least a month. He issued a fraudulent report on May 21, 2012 and hired Ghaznawi to issue reports on May 24 and June 5, 2012. *Id.* at ¶¶ 23-24. Although the allegations of the Complaint do not state whether Anguka, Ghaznawi or both issued the June 13, 2012 investor newsletter, they support the inference that Anguka was involved in its publication. *Id.* at ¶ 25.

These allegations are sufficient to satisfy the first two *Fehn* factors -- scienter and repeated misconduct. 97 F.3d at 1295-96. Anguka has provided no evidence to support any of the remaining, potentially mitigating factors, *i.e.*, a clear recognition of the wrongful nature of his conduct; that it is unlikely that he will commit future violations; and sincere assurances that he will not do so. *Id.* Of course, Anguka has been enjoined from such violations and from participating in an offering of penny stock. Dkt. 58 at 2-3. He has declared that he cannot find employment or contribute to the payment of the living expenses of his family. Dkt. 76. He has been required to disgorge $44,811, as well as $4,819 in prejudgment interest. Dkt. 58 at 4-5. Whether these restrictions and obligations will sufficiently deter all future misconduct is not at all clear.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

The SEC seeks the imposition of third tier penalties. Dkt. 65 at 8. It argues that there was a significant risk of substantial losses to others. *Id.* at 8 n.4. Forum's financial report for the fiscal year ending September 30, 2012, reports 32,941,151 outstanding shares, and shareholders' equity of $25,924,757. *Id.*[4]

There is insufficient evidence to support the imposition of third tier penalties. The SEC has not submitted any evidence of losses to others, but only broad statements about the value and number of shares of Forum stock, most of which was owned by the management of the company. Even if third tier penalties were available, civil penalties are intended to "deter future violations of securities laws" and to "punish the individual violator." *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009). A penalty greater than $150,000 is not one that has been shown will facilitate attaining these goals. Anguka is already required to disgorge profits from the scheme. They totaled less than $50,000. According to his declaration, Anguka has no income but has significant debt. Therefore, it is unlikely that he will pay a significant penalty. See Dkt. 76; *SEC v. Jasper*, 883 F. Supp. 2d 915, 931 (N.D. Cal. 2010) ("[A]bility to pay is a relevant consideration when determining the amount of civil penalties to impose.").

Finally, Clozza was the driving force behind the scheme. He has been required to pay $58,608 in disgorgement. Dkt. 56 at 4. The imposition of a substantially larger penalty on Anguka, who played a lesser role in the scheme, would be disproportionate and unjustified.[5] It would be inequitable to require Anguka to pay significantly more than Clozza "despite varied levels of involvement and unjust enrichment." *CMKM Diamonds*, 635 F. Supp. 2d at 1192. Thus, despite the clear and knowing wrongful conduct by Anguka, a civil penalty against Anguka of $10,000 is appropriate. This amount is sufficient to deter future violations of securities laws and to penalize Anguka for his wrongdoing.

    **B.**    **Officer, Director, and Penny Stock Bars**

        1.    <u>Legal Standard</u>

Under 15 U.S.C. § 78u(d)(2),

> the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 78j(b) of this title or the rules or regulations thereunder from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78*l* of this title or that is required to file reports pursuant to section 78*o*(d) of this title if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer.

---

[4] The SEC cites Forum's Form 20-F for the period ending September 30, 2012, which is available on the EDGAR website. This document is subject to judicial notice as an official record. *See In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060 (C.D. Cal. 2012) ("Courts can consider securities offerings and corporate disclosure documents that are publicly available.").

[5] The SEC represented at the hearing that Clozza is a Canadian citizen and that Canada does not recognize judgments that impose penalties by foreign governments. From this it contends that enforcement of a penalty against him is unlikely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

Under 15 U.S.C. § 77t(g)(1) a court may prohibit anyone who participated in an offering of penny stock in violation of the Securities Act from participating in such an offering "conditionally or unconditionally, and permanently or for such period of time as the court shall determine." Under 15 U.S.C. § 78u(d)(6) a court may prohibit anyone who was participating in an offering of penny stock at the time of an alleged violation of the Exchange Act from participating in such an offering according to the same terms.

"The district court has broad equitable powers to fashion appropriate relief for violations of the federal securities laws, which include the power to order an officer and director bar." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998). Further,

> [i]n determining whether to order the bar, a court may consider: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur."

*Id.* (quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

"Courts consider the same factors when deciding whether to impose officer and director bars and whether to impose a penny stock bar." *SEC v. All. Transcription Servs., Inc.*, No. CV08-1464-PHX-NVW, 2009 WL 5128565, at *10 n.2 (D. Ariz. Dec. 18, 2009).

    2.  <u>Application</u>

The SEC argues that the *Pacific Bancorp* factors "weigh heavily" in favor of imposing a permanent officer and director and penny stock bar on Clozza. Dkt. 65 at 13. In support of this position it argues that his conduct was egregious. Thus, he knowingly carried out a scheme to defraud members of the public, including by the issuance of false press releases. The SEC also claims that Clozza owned more than five million shares of Forum stock. This provided him with a significant financial incentive to cause an inflation of its market price. It also contends that his unlawful conduct continued even after he became the subject of an investigation by the BCSC. *Id.* The only factor that is neutral is that there is no showing that Clozza is a repeat offender. *Id.*

According to the allegations in the Complaint, which are taken as true for the purposes of this Motion, Clozza engaged in repeated and knowing securities violations. There included causing Forum to issue press releases that contained false quotations and misrepresentations as to the demand for Forum's stock. Complaint at ¶¶ 27-29. He also issued a false and misleading press release in response to an inquiry from the BCSC. It stated that Forum "has no knowledge of the source of funding for the creation and dissemination of the internet materials." *Id.* at ¶ 30. Although the BCSC issued a brief halt trade order, Clozza continued to cause Forum to issue false and misleading press releases. *Id.* at ¶¶ 33-34. Moreover, according to Forum's 2012 Form 20-F, Clozza owned 16.48 percent of Forum's common stock, 37.91 percent of Forum's Class A preferred stock, and 43.15 percent of Forum's Class B preferred

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | ED CV14-02376 JAK (DTBx) | Date | November 18, 2016 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Forum National Investments Ltd., et al. | | |

stock. Thus, he stood to make a significant profit through his misrepresentations about the value of the stock.

Under these circumstances, a bar that precludes Clozza from serving as an officer and director or playing a role in connection with penny stock is appropriate. *See SEC v. Abellan*, 674 F. Supp. 2d 1213, 1223 (W.D. Wash. 2009) (imposing a permanent penny stock bar where the defendant "organized and carried out a prolonged scheme to defraud investors that involved a high degree of scienter and yielded over $13 million in ill-gotten gains"); *Jasper*, 883 F. Supp. 2d at 930 (imposing a two year officer and director bar where, "[w]hile it is clear that the costly financial restatements that Defendant's actions necessitated harmed the Company and caused losses to investors, Defendant reaped only indirect benefits from the backdating scheme, and thus it does not appear that Defendant acted purely out of selfish motives"); *SEC v. Aqua Vie Beverage Corp.*, No. CV 04-414-S-EJL, 2008 WL 1914723, at *2 (D. Idaho Apr. 29, 2008) (imposing an eight-year officer and director bar where the defendant's "numerous violations of the securities laws were at least reckless, and he has not yet acknowledged the wrongful nature of his conduct").

Clozza's violations were serious. There is, however, no evidence that he has been a repeat offender. Therefore, a lifetime ban is unwarranted. *See SEC v. All. Transcription Servs., Inc.*, No. CV08-1464-PHX-NVW, 2009 WL 5128565, at *9 (D. Ariz. Dec. 18, 2009) ("While it is not essential for a lifetime ban that there be past violations, in the absence of such violations, a court must articulate a factual basis for a finding that there is a likelihood of recurrence.").

For the foregoing reasons, it is determined that a 10 year ban is appropriate.

### IV.    Conclusion

For the reasons stated in this Order, the Motion is **GRANTED IN PART**. Anguka is ordered to pay a penalty of $10,000, with that amount presently due. Clozza is banned from serving as an officer or director and from participating in an offering of penny stock for a period of ten years from the date of this Order.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |